# United States District Court
## EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| SHIFTKEY, LLC, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. 4:25-cv-521 |
| | § | Judge Mazzant |
| NURSEIO, LLC, CHRISTIAN | § | |
| MCNAMEE, and YULIA MCKINNEY, | § | |
| | § | |
| *Defendants.* | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff ShiftKey, LLC's Emergency Application for Temporary Restraining Order, Preliminary Injunction, and Motion for Expedited Discovery (Dkt. #9). Having considered the Motions and the relevant pleadings, the Court finds that they should be **DENIED**.

## BACKGROUND

This is a trade secrets case. Plaintiff is a healthcare technology company headquartered in Irving, Texas (Dkt. #9 at pp. 8–9). It operates a platform that connects licensed healthcare professionals with healthcare facilities to fill open shifts (Dkt. #9 at pp. 8–9). Since its founding in 2016, Plaintiff has grown to nearly five hundred employees and provides services nationwide, excluding a few states such as California and New Jersey (Dkt. #9 at p. 9). In doing so, Plaintiff has developed client lists, internal strategies, pricing information, and other data central to its operation (Dkt. #9 at p. 13).

Defendant McNamee joined Plaintiff in 2021 and held multiple roles (Dkt. #9 at p. 13). He signed an employment agreement containing confidentiality, non-compete, and non-solicitation provisions (Dkt. #9 at p. 13). In April 2024, Plaintiff terminated Defendant McNamee, who shortly

thereafter joined Defendant NurseIO, a competing healthcare technology firm operating in overlapping markets (Dkt. #9 at p. 16). Plaintiff alleges that Defendant McNamee did not promptly return his company laptop (Dkt. #9 at p. 16). And when he finally did, Plaintiff discovered that the laptop had been wiped clean of all data (Dkt. #9 at p. 16).

Defendant McKinney joined Plaintiff in 2021 and ultimately served as Director of the Southeast Region, with responsibilities spanning several southern states (Dkt. #9 at p. 14). Like Defendant McNamee, she signed an agreement imposing confidentiality and post-employment restrictions (Dkt. #9 at p. 24). In May 2025, she resigned and began working with Defendant NurseIO shortly thereafter (Dkt. #9 at p. 22). Before her resignation, she forwarded Plaintiff's internal documents to her personal email, including client lists, pricing information, and strategic plans (Dkt. #9 at p. 22).

Plaintiff contends that Defendants McNamee and McKinney (the "Employee Defendants") violated their agreements when they solicited Plaintiff's clients and employees, and that Defendant NurseIO currently benefits from the misappropriation of Plaintiff's proprietary data and trade secrets (Dkt. #9 at pp. 39, 46). Plaintiff now seeks emergency injunctive relief to prevent further alleged misuse of its confidential information and to protect its competitive market positioning (Dkt. #9 at p. 8).

On May 15, 2025, Plaintiff filed suit alleging violations of the Defend Trade Secrets Act ("DTSA") against all Defendants (Dkt. #1 at p. 20); breach of contract against the Employee Defendants (Dkt. #1 at p. 23); breach of fiduciary duty against the Employee Defendants (Dkt. #1 at p. 28); tortious interference with existing contract against Defendants McNamee and NurseIO (Dkt. #1 at p. 30); and violations of 18 U.S.C. §§ 1030(a)(2)(C) and (a)(4), the Computer Fraud

and Abuse Act ("CFAA"), against the Employee Defendants (Dkt. #1 at p. 33). On May 15, 2025, Plaintiff filed the instant Motions (Dkt. #9). On May 23, 2025, the Court held a hearing, during which it permitted Defendants to file a response (*See* Dkt. #18). On June 2, 2025, the Employee Defendants filed their Response (Dkt. #25). On June 3, 2025, Defendant NurseIO filed its Response (Dkt. #29). The Motions are now ripe for adjudication.

## LEGAL STANDARD

A party seeking a preliminary injunction must establish the following elements: (1) a substantial likelihood of success on the merits; (2) a substantial threat that plaintiffs will suffer irreparable harm if the injunction is not granted; (3) that the threatened injury outweighs any damage that the injunction might cause the defendant; and (4) that the injunction will not disserve the public interest. *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008). "A preliminary injunction is an extraordinary remedy and should only be granted if the plaintiffs have clearly carried the burden of persuasion on all four requirements." *Id.* Nevertheless, a movant "is not required to prove its case in full at a preliminary injunction hearing." *Fed. Sav. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 558 (5th Cir. 1985) (quoting *Univ. of Tex. v. Comenisch*, 451 U.S. 390, 395 (1981)). The decision whether to grant a preliminary injunction lies within the sound discretion of the district court. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 320 (1982).

## ANALYSIS

Plaintiff's Motions present two issues for the Court to analyze, namely:

1. Whether Plaintiff is entitled to emergency injunctive relief, and

2. Whether Plaintiff is entitled to expedited discovery.

(*See* Dkt. #9 at pp. 25, 47). The Court analyzes each issue in turn below.

I.      **Plaintiff's Application for Temporary Restraining Order and Preliminary Injunction**

      A.      **Irreparable Harm**

Plaintiff argues that it faces imminent and irreparable harm due to Defendants' ongoing use and disclosure of its confidential trade secrets and proprietary information (Dkt. #9 at p. 8). Plaintiff also contends that Defendant NurseIO—aided by Defendants McNamee and McKinney—has unlawfully solicited Plaintiff's clients and employees (Dkt. #9 at pp. 16–17). Because Plaintiff alleges distinct arguments of irreparable harm as to Defendants McNamee, McKinney, and NurseIO, the Court will assess irreparable harm as they relate to each defendant in turn below.

                1.      **Defendant McNamee has not caused irreparable harm.**

To start, Plaintiff argues that Defendant McNamee caused irreparable harm when he enacted a plan to steal Plaintiff's clients, thereby breaching his restrictive covenants (Dkt. #9 at pp. 44-45). Defendant McNamee argues that Plaintiff's delay in seeking injunctive relief undermines any claim of irreparable and imminent harm (Dkt. #25 at p. 30). Defendant McNamee began working for Defendant NurseIO in April 2024, shortly after being terminated (Dkt. #25 at p. 30). Yet, Plaintiff did not file its TRO application until mid-May 2025, over a year later (*See* Dkt. #9; Dkt. #25 at p. 30). Defendant McNamee insists that this long delay is inconsistent with a claim of urgent, ongoing harm and instead suggests that any injury is speculative or reparable (Dkt. #25 at pp. 30). Where plaintiffs lacking concrete evidence of client loss or market disruption wait to seek emergency relief, Defendant McNamee argues that injunctive relief is improper (Dkt. #25 at pp. 30–31) (citing *Wireless Agents, L.L.C. v. T-Mobile USA, Inc.*, No. 3:05-CV-0094-D, 2006 WL 1540587 at *3 (N.D. Tex. June 6, 2006)).

The Court agrees. Plaintiff has not demonstrated that it will suffer irreparable harm from Defendant McNamee's conduct absent injunctive relief. While Plaintiff asserts that Defendant McNamee solicited employees and misused confidential information, Plaintiff waited to file the instant Motion until over a year after Defendant McNamee's termination (Dkt. #25 at pp. 30–31). This substantial delay undermines Plaintiff's claim of urgency and weighs heavily against a finding of irreparable harm, particularly when "[Plaintiff] was aware that [Defendant] McNamee was working for a competitor and claims it knew he had taken its confidential information because he 'wiped' his [work] laptop before he returned it two weeks after being fired" (Dkt. #25 at p. 30). "[D]elay in seeking a remedy is an important factor bearing on the need for a preliminary injunction," and Plaintiff's months of inaction signals a lack of urgency and irreparable harm (Dkt. #25 at pp. 30–31) (citing *Wireless Agents*, 2006 WL 1540587, at *3). Accordingly, the Court concludes that Defendant McNamee did not cause Plaintiff to suffer irreparable harm.[1] The Court will therefore **DENY** Plaintiff's Motion as to Defendant McNamee.

### 2.    Defendant McKinney has not caused irreparable harm.

Plaintiff argues that Defendant McKinney's actions pose an imminent and irreparable threat to its business (Dkt. #9 at p. 45). It alleges that in the weeks before resigning, Defendant McKinney surreptitiously forwarded thousands of Plaintiff's internal documents—including customer and pricing data, internal strategies, and performance metrics—to her personal email account (Dkt. #9 at pp. 20–21). Plaintiff further contends that Defendant McKinney attempted to cover her tracks by deleting the sent emails; this conduct, in Plaintiff's view, facilitated Defendant

---

[1]    Because irreparable harm is a threshold requirement for injunctive relief, the Court need not consider Plaintiff's likelihood of success on the merits as to Defendant McNamee. *Burley v. Davis*, No. 6:17-CV-490, 2018 WL 1165840, at *4 (E.D. Tex. Mar. 6, 2018) ("declin[ing] to address the remaining elements" when no substantial threat of irreparable harm exists).

McKinney's alleged misappropriation of confidential and trade secret information (Dkt. #9 at pp. 23–24, 45–46). According to Plaintiff, Defendant McKinney now "stand[s] to benefit from [her] misappropriation of [Plaintiff's] Trade Secrets and Proprietary Information because [she] would avoid the time, expense, and labor necessary to develop [Plaintiff's] Trade Secrets and Proprietary Information" (Dkt. #9 at pp. 45–46). The resulting competitive harm cannot be undone or adequately compensated by monetary damages alone, according to Plaintiff, because "any calculation of monetary damages would fail to remedy the harm done by [Defendant McKinney] in obtaining access to [Plaintiff's] Trade Secrets and Proprietary Information without expending the time and resources to develop the extensive client base, reputation, and goodwill that [Plaintiff] has cultivated in the last decade of its existence" (Dkt. #9 at pp. 45–46).

Defendant McKinney responds that Plaintiff has not adduced any concrete evidence of misuse or imminent harm resulting from her conduct (Dkt. #25 at p. 32). She further argues that Plaintiff's allegations are speculative and unsupported by facts showing she disclosed or used any confidential information since her resignation (Dkt. #25 at p. 32). In her view, Plaintiff's speculative claims of future misuse do not meet the burden to show immediate, non-compensable injury sufficient to justify a TRO (Dkt. #25 at p. 32). Further, Defendant McKinney has already "been instructed by Defendant NurseIO to not have any involvement in the recruitment of [Plaintiff's] employees to [Defendant] NurseIO" (Dkt. #25 at pp. 32–33).

The Court also finds that Plaintiff has not demonstrated irreparable harm justifying injunctive relief against Defendant McKinney. Although Plaintiff alleges that Defendant McKinney forwarded company documents to her personal email account prior to her resignation and later deleted those emails (Dkt. #9 at pp. 13–14), Plaintiff does not provide any specific

evidence that Defendant McKinney disclosed, used, or otherwise acted on that information after leaving the company (Dkt. #25 at p. 32). Allegations of past misconduct—without more—are insufficient to warrant equitable relief and do not establish that irreparable harm is imminent or ongoing. *Gray Cas. & Sur. Co. v. 3i Contracting, LLC*, No. 3:23-CV-2511-L, 2024 WL 1121800, at *12 (N.D. Tex. Mar. 13, 2024) ("[T]he Fifth Circuit has previously held that, '[a]lthough past wrongs may help establish the threat of future injury, they are alone insufficient' to establish the type of irreparable harm required for a preliminary injunction.").

Moreover, the mere possession of company documents does not support the finding of irreparable harm where there is no showing of actual or imminent use. *Blue Yonder Group, Inc. v. Kinaxis Inc.*, No. 3:20-CV-3636-K, 2021 WL 3674100, at *1 (N.D. Tex. Mar. 5, 2021) ("Possession of the [confidential information] and a mere possibility of usage do not support a finding by the Court of immediate and irreparable harm."). Neither can injunctive relief rest on speculation or generalized fears of future harm. *Cecilio Musical Instruments v. Austin Bazaar Inc.*, No. A-11-CA-055-LY, 2012 WL 13041339, at *3 (W.D. Tex. Jan. 20, 2012) ("fear and apprehension of injury are insufficient to support the issuance of a preliminary injunction") (citation omitted). Given that the record does not show that the allegedly misappropriated information has been shared with competitors or deployed to Plaintiff's detriment (Dkt. #25 at pp. 8–9), Plaintiff's asserted harm—without more—is compensable by monetary damages and does not rise to the level of urgency required for a temporary restraining order.

The balance of harms also favors Defendant McKinney. She has already resigned and begun new employment (Dkt. #25 at pp. 17–18). A temporary restraining order—particularly one entered without concrete evidence of misuse—would interfere with her livelihood and reputation based on

speculation rather than proof (*See* Dkt. #25 at p. 9). Where the alleged harm to the plaintiff is speculative and the injury to the defendant is concrete and immediate, the Court is disinclined to impose emergency equitable relief. *See Blue Yonder*, 2021 WL 3674100, at *1; *Cecilio*, 2012 WL 13041339, at *3. Accordingly, the Court finds that Plaintiff has failed to establish irreparable harm with respect to Defendant McKinney and that the balance of harms weighs against a TRO.[2] The Court will therefore **DENY** Plaintiff's Motion as to Defendant McKinney.

### 3.    Defendant NurseIO has not caused irreparable harm.

Plaintiff argues that Defendant NurseIO poses an ongoing threat to Plaintiff's competitive standing because it is allegedly using Plaintiff's confidential business information to accelerate market presence and divert business relationships (Dkt. #9 at pp. 45–46). Plaintiff further claims that Defendant NurseIO, as Defendant McKinney's new employer, stands to benefit from the information she forwarded to herself—including pricing data, client lists, and platform strategies (Dkt. #9 at pp. 14–15, 45–46). Plaintiff also points to the timing of Defendant McKinney's resignation and Defendant NurseIO's recent launch as circumstantial evidence of coordination and misuse (Dkt. #9 at pp. 46–47). Plaintiff asserts that if Defendant NurseIO is permitted to use these materials, it will unfairly leapfrog years of development and erode Plaintiff's competitive edge and goodwill in a way that monetary damages cannot repair (Dkt. #9 at pp. 23–24).

Defendant NurseIO responds that Plaintiff offers no direct evidence that Defendant NurseIO ever received, reviewed, or used any confidential information (Dkt. #Dkt. #29 at pp. 7–9). Defendant NurseIO also claims that it "has not used, will not use, and has no reason to use, any of

---

[2]  Consequently, the Court need not assess Plaintiff's likelihood of success on the merits as to Defendant McKinney. *See supra* note 1.

[Plainitff's] Trade Secrets or Proprietary Information in the course of its business" (Dkt. #29 at p. 15). To assuage any concerns Plaintiff may have about that claim, Defendant NurseIO has also "offered to return and/or destroy any information identified by [Plaintiff] that [it] believes to be part of its Trade Secrets or Proprietary Information" (Dkt. #29 at p. 15). In Defendant NurseIO's view, Plaintiff's requested relief improperly seeks to block lawful competition under the guise of trade secret protection (Dkt. #29 at p. 15) (citing *Zep Mfg. Co. v. Harthcock*, 824 S.W.2d at 660; *Caller-Times Pub Co., Inc. v. Triad Comm's, Inc.*, 855 S.W.2d 18, 21 (Tex. App.—Corpus Christi 1993, no pet.)).

The Court finds that Plaintiff has not established irreparable harm sufficient to justify injunctive relief against Defendant NurseIO. Plaintiff insists that Defendant NurseIO will benefit from using confidential materials forwarded by Defendant McKinney, but Plaintiff has not presented sufficient evidence to show that Defendant NurseIO ever received, reviewed, or used any of those materials (Dkt. #29 at p. 15). For instance, Plaintiff does not identify any accounts actually lost to Defendant NurseIO, nor does it offer proof that Defendant NurseIO has actually used Plaintiff's pricing data, market strategy, or client lists to compete unfairly (Dkt. #29 at pp. 7–8). The mere fact that Defendant McKinney joined Defendant NurseIO after resigning from Plaintiff does not, without more, establish that Defendant NurseIO participated in or profited from any alleged misappropriation. General allegations that a competitor benefitted from confidential information, when unsupported by factual evidence of the competitor's use or disclosure, are insufficient to satisfy the irreparable harm standard. *Blue Yonder*, 2021 WL 3674100, at *1. Even assuming that Defendant NurseIO received some benefit from McKinney's prior access to Plaintiff's documents, Plaintiff must show a concrete and imminent threat of injury, not theoretical

competitive disadvantage. *See Winter v. Nat'l Resources Defense Council, Inc.*, 555 U.S. 1, 24, (2008). Plaintiff has made no such showing.

Moreover, Defendant NurseIO's representation that it is willing to destroy any confidential information identified by Plaintiff in Defendant NurseIO's possession weighs against a finding of irreparable harm (Dkt. #29 at p. 15). Defendant NurseIO's willingness to take remedial steps undermines Plaintiff's claim that only immediate judicial intervention can prevent imminent harm (Dkt. #9 at p. 46). Plaintiff has not shown that any threatened misuse remains unresolved or incapable of mitigation through this proposed measure. The Court will therefore **DENY** Plaintiff's Motion as to Defendant NurseIO.[3]

## II.    Expedited Discovery

Having established that Plaintiff is not entitled to a TRO, the Court will similarly **DENY** Plaintiff's accompanying Motion for expedited discovery. Such discovery is unavailable where preliminary injunctive relief is denied. *Amos v. Taylor*, No. 4:20-CV-7-DMB-JMV, 2020 WL 5809972, at *3 (N.D. Miss. Aug. 26, 2020) ("[E]xpedited discovery sought for the purpose of a preliminary injunction is only discoverable if the request for injunctive relief is proper under the operative complaint."). Because the Court will not grant a TRO, a need to accelerate discovery on an emergency basis no longer exists. Plaintiff may pursue discovery in accordance with the Federal Rules of Civil Procedure and forthcoming Scheduling Order.

---

[3]    Consequently, the Court need not assess Plaintiff's likelihood of success on the merits as to Defendant NurseIO. *See supra* note 1.

## CONCLUSION

It is therefore **ORDERED** that Plaintiff ShiftKey, LLC's Emergency Application for Temporary Restraining Order, Preliminary Injunction, and Motion for Expedited Discovery (Dkt. #9) are hereby **DENIED without prejudice**.

**IT IS SO ORDERED.**

**SIGNED this 28th day of July, 2025.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE