# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| SHIFTKEY, LLC,<br><br>*Plaintiff*,<br>v.<br><br>NURSEIO LLC, NURSEIO INC., STAFFU LLC, CHRISTIAN MCNAMEE, AND YULIA MCKINNEY,<br><br>*Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 4:25-cv-00521<br>Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff Shiftkey, LLC's Motion for Sanctions Against Defendants (Dkt. # 83). Having considered the Motion and the relevant pleadings, the Court finds that the Motion should be **GRANTED**.

## BACKGROUND

This case arises from allegations by Plaintiff that two former employees, Christian McNamee and Yulia McKinney (collectively, the "Individual Defendants"), misappropriated Plaintiff's confidential information and violated post-employment restrictive covenants by joining a competitor, Defendant NurseIO (Dkt. #1 at pp. 1–3). Plaintiff is a healthcare technology company that operates a platform connecting healthcare professionals with healthcare facilities to fill open shifts across numerous states (Dkt. #1 at pp. 4–6). According to Plaintiff, the Individual Defendants each signed Employee Invention Assignment and Confidentiality Agreements (the "Agreements") containing confidentiality, non-compete, and non-solicitation provisions (Dkt. #1 at p. 7).

Plaintiff alleges Defendant McNamee joined Defendant NurseIO as Vice President of Strategy in April 2024 and used Plaintiff's proprietary data to solicit key employees and clients in violation of his contractual and common law duties (Dkt. #1 at pp. 12–13). In May 2025, Defendant McKinney resigned to work for Defendant NurseIO, allegedly after emailing thousands of pages of Plaintiff's internal documents—including client lists and pricing information—to her personal account, which she later attempted to conceal by deleting the emails (Dkt. #1 at p. 15).

Plaintiff contends that Defendant NurseIO knowingly induced the Individual Defendants to breach their Agreements and engaged in a coordinated effort to misappropriate Plaintiff's confidential information and trade secrets to unfairly compete in overlapping markets (Dkt. #1 at pp. 22–23).

On May 16, 2025, Plaintiff filed an emergency motion for temporary restraining order seeking injunctive relief against all Defendants (Dkt. #9). On July 28, 2025, the Court denied Plaintiff's emergency motion for temporary restraining order considering that "Plaintiff offers no direct evidence that Defendant NurseIO ever received, reviewed, or used any confidential information" (Dkt #54 at p. 8). Further, the Court denied injunctive relief as to Defendant McKinney because "the record does not show that the allegedly misappropriated information has been shared with competition" (Dkt. #54 at p.6).

Following the Court's TRO Order, Plaintiff conducted a forensic audit into NurseIO's system at Plaintiff's expense, which NurseIO fully complied with (Dkt. #83 at p. 9; Dkt. #96 at pp. 1–2). The forensic audit revealed that NurseIO was in fact in possession of Plaintiff's confidential information (Dkt. #83 at p. 11). Defendant McNamee shared a spreadsheet labeled "SK Avg Monthly Data" with NurseIO co-founders that contained Plaintiff's information. (Dkt. #83 at

p. 5). Further, Defendant McKinney emailed thousands of pages of Plaintiff's data, including 4,300 contacts for Shiftkey clients, competitive analysis reports, internal training materials, and client agreements (Dkt. #83 at pp. 1, 3–4).

On March 25, 2026, Plaintiff filed its Motion for Sanctions Against Defendants (the "Motion") (Dkt #83). Plaintiff requests the Court sanction Defendants' misconduct by awarding reasonable attorneys' fees and costs to Plaintiff incurred in (i) bringing the TRO Motion; (ii) conducting the forensic examination; and (iii) bringing this Motion (Dkt. #83 at p. 15).

On April 8, 2026, Defendant McNamee filed an opposition (Dkt. #95) and Defendants NurseIO, Inc., NurseIO LLC, and Staff U LLC (collectively, "NurseIO") filed a separate opposition (Dkt. #96). Defendant McKinney did not respond to the Motion.

On April 15, 2026, Plaintiff filed a reply in support of the motion (Dkt. #101). On April 20, 2026, Defendant McNamee filed a sur-reply (Dkt. #105). NurseIO did not file a sur-reply. The Motion is now ripe for adjudication.

## LEGAL STANDARD

The Court has the inherent authority to issue sanctions necessary to "control the litigation before it." *Pena v. Lone Star Nat'l Bank, N.A.*, 807 F. App'x 353, 356 (5th Cir. 2020) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 31, 49-50 (1991)). That said, the Court may exercise its inherent authority to impose sanctions only if the exercise is essential to preserve the authority of the Court. *See*, *e.g.*, *Nat. Gas Pipeline Co. of Am. V. Energy Gathering, Inc.*, 86 F.3d 464, 467 (5th Cir. 1996). To this end, the Court will impose sanctions under its inherent authority only if it finds that the sanctioned party acted in bad faith. *Pena*, 807 F. App'x at 356.

The Court enjoys considerable discretion in deciding whether to impose discovery sanctions, but the Fifth Circuit has cautioned that "sanctions should not be used lightly." *E.E.O.C. v. Gen. Dynamics Corp.*, 999 F.2d 113, 119 (5th Cir. 1993). And, in cases in which sanctions are appropriate, courts should generally impose the "least onerous sanction appropriate." *Brown v. Oil States Skagit Smatco*, 664 F.3d 71, 79 (5th Cir. 2011).

**ANALYSIS**

Plaintiff seeks sanctions against Defendants on the basis that Defendants acted in bad faith by submitting false testimony in the form of four affidavits while opposing Plaintiff's TRO Motion in June 2025. (Dkt. #83 at pp. 1–2). The Court has "inherent power to sanction parties for lying to the court." *Farrar v. Lapan*, 2023 WL 3151093, at *1 (6th Cir. 2023)(citing *Chambers* 501 U.S. at 49-50); *Hong v. Mommy's Jamaican Market Corp.*, 2024 WL 3824394, at *12 (S.D.N.Y. Aug. 14, 2024) (recognizing the inherent authority of the court to impose sanctions "based on submitted false declarations to the Court"). The Court will consider each of Defendant's arguments in response to these allegations below.

**I. Defendant NurseIO**

First, the Court notes that no Defendant disputes the falsity of their prior sworn statements *See* Dkt. #95; Dkt. #96; Dkt. #105). Rather, NurseIO takes the position that the documents are not material to any issue before the Court and would not have altered the Court's analysis (Dkt. #96 p.6). However, the documents directly contradict the Court's opinion denying the TRO (Dkt. #54. at p. 9)("Plaintiff has not presented sufficient evidence to show that NurseIO ever received, reviewed, or used any" of Plaintiff's confidential materials). At a minimum, Defendants and their counsel failed to verify that Defendants' representations in their declarations were accurate; at worst, they knowingly filed false statements with the Court. *See Hill v. Hunt*, 2010 WL 11537540,

*11 (N.D. Tex. Feb. 18, 2010) (invoking the Court's inherent powers to order sanctions where a false representation in an affidavit "denied the Court the opportunity to consider" "accurate information").

NurseIO then argues that the false statements are immaterial because Plaintiff still does not have enough evidence to prove that NurseIO used any of the alleged information (Dkt. #96 at p. 6).[1] This position is not persuasive. NurseIO cannot swear that documents do not exist, then when the documents come to light deem them immaterial to avoid the consequences of submitting false statements. It does not matter that the forensic audit may have revealed only "a handful of documents that were not used, not relied upon, and in many instances not even remembered" (Dkt. #96 at p. 1). Whether NurseIO used or relied on the allegedly stolen information is a merit question to be answered by the Court or a jury under a full record. A one-sided argument of immateriality is not a valid defense to lying under oath. *See Raniere v. Microsoft Corp.*, Nos. 3:15-cv-540-M; 3:15-cv-2298-M, 2016 WL 4626584, at *5 (N.D. Tex. Sep. 2, 2016) (invoking the court's inherent authority to impose sanctions where a party filed a document with false representations then argued the representation was "an immaterial lie on an immaterial matter"). This Court will not decide in this Order whether the additional evidence is enough to change the outcome of the TRO order. However, the Court finds that Plaintiff was prejudiced in expending considerable resources pursuing injunctive relief that was denied based on a tainted record.

NurseIO attempts to explain the false statements by arguing that these documents were so insignificant that "the individuals who submitted the declarations did not recall the documents,"

[1] Defendant's position is best articulated by Sean Couson, NurseIO co-founder, "[w]ell, if there is no harm, there is no foul. We didn't harm [ShiftKey] in any way. We didn't cause [ShiftKey] damage, and there is no foul" (Dkt. #101 at p.1).

(Dkt. #96 at p. 5). Further, NurseIO argues that the declarations were "accurate based on the information known and the searches conducted at the time they were made." (Dkt. #96 at p.5). This is not persuasive to the Court. The sworn declarations from Defendants state that "NurseIO is not in possession of any of ShiftKey's Trade Secrets or Proprietary Information" (Dkt. #83 at p.1; Dkt. #29-1 at ¶ 8; Dkt. #29-1 at ¶ 8); "I did not keep any ShiftKey confidential information" (Dkt. #83 at p.1; Dkt. #25-2 at ¶ 8); "The *only* ShiftKey documents I kept were personnel files relating to me, such as my offer letter and promotion letters" (Dkt. #83 at pp. 1–2; Dkt. #25-2 at ¶ 8). The record now shows, among other things, that former ShiftKey employees, McKinney and McNamee, engaged in conversations to "convertly score some [ShiftKey] intel" and "burn shiftkey all the way down . . ." before emailing thousands of pages of Plaintiff's data to personal email accounts (Dkt. #83 at pp. 1–3). While meeting with the NurseIO Board, Courson admitted that regardless of whether the information was proprietary, "[w]e stole the hell out if. We're guilty right?" (Dkt. # 83 at p. 15). In considering these new facts, in addition to testimony from Courson that there "probably wasn't much of an investigation at all" into whether any of Plaintiff's information existed on NurseIO's system[2], the Court does not find NurseIO's argument credible. (Dkt. # 82 at p. 12; Dkt. #82-A at 139:4-12).

Finally, NurseIO's argument that its discovery cooperation shows good faith is irrelevant where NurseIO has already defeated a TRO with the assistance of false testimony. Considering the sum of the arguments, the Court finds that NurseIO acted in bad faith in submitting false declarations. Thus, the Court finds that sanctions against NurseIO are warranted.

[2] Similarly, in a deposition, NurseIO co-founder Kober "guess[ed]" that he may have searched his inbox for the term "ShiftKey" and "that's really it." (Dkt. #83 at p. 12)

## II. Defendant McNamee

Defendant McNamee responds independently, arguing that he "made no admissions that his declaration was false" (Dkt. #95 at p. 2). However, just because McNamee did not *admit* that he made false statements in his declaration, does not mean that he did not do so.

McNamee swore "I do not possess any ShiftKey confidential information and have not used ShiftKey confidential information in any way since I was terminated [from ShiftKey]" (Dkt. #83 at p. 4). However, McNamee shared a spreadsheet labeled "SK Avg Monthly Data" via Slack with NurseIO (Dkt. #83 at p. 5). McNamee argues that he did not remember sending the spreadsheet, especially because McNamee had been terminated from NurseIO and had no access to Slack history, email archives, or any other system that might have refreshed his recollection (Dkt. #95 at p. 4). As discussed above, the Court finds this excuse too convenient for Defendant McNamee. Defendant McNamee's position lacks credibility considering the newly discovered statements that he was part of a "mad sneaky" plan to "covertly score some [ShiftKey] intel" (Dkt. 84-24 at p. 5). Thus, the Court finds that sanctions against Defendant McNamee are warranted.

## III. Defendant McKinney

Defendant McKinney filed no response. Under Local Rule 7(d), "[a] party's failure to oppose a motion in the manner prescribed herein creates a presumption that the party does not controvert the facts set out by movant and has no evidence to offer in opposition to the motion." Because Defendant McKinney did not file a response to this argument, the Court presumes that Defendant does not controvert the facts set out by Plaintiff and has no evidence to offer in opposition to the argument. Thus, the Court finds that sanctions against Defendant McKinney are warranted.

## IV. Appropriateness of Sanctions

Having found that sanctions are warranted against the Defendants under the court's inherent authority, the Court is now tasked with determining what sanctions are appropriate in this case. "Because of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers*, 501 U.S. 32, 44 (1991). However, "the 'less severe sanction' of an assessment of attorney's fees is undoubtedly within a court's inherent power." *Id*. at 45. "Federal courts have the inherent authority to sanction conduct abusive of the judicial process, including ordering one party to pay the opposing party's attorney's fees." *Jinsun, L.L.C. v. Mireskandari*, 2022 WL 35622, *1 (5th Cir. Jan. 4, 2022).

As discussed above, the Court finds that the imposition of sanctions against all Defendants is warranted. The Court further finds an order to pay Plaintiff's attorney's fees incurred in (i) bringing the TRO Motion; (ii) conducting the forensic examination; and (iii) bringing this Motion is appropriate here. Thus, the Court will order Plaintiff to submit a declaration setting forth the fees it seeks within 14 days of this Order.

## CONCLUSION

It is therefore **ORDERED** that is Plaintiff Shiftkey, LLC's Motion for Sanctions Against Defendants (Dkt. # 83) is hereby **GRANTED**.

It is further **ORDERED** that Plaintiff shall submit a declaration setting forth the fees it seeks within 14 days of this Order.

**IT IS SO ORDERED.**

**SIGNED this 13th day of October, 2026.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE